UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| RICHARD A. RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 20-4121 |
| | ) | |
| WEXFORD HEALTH SOURCES, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff, proceeding by and through his counsel of record, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment claim for deliberate indifference to a serious medical need. The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment. (Doc. 73). The motion is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff was incarcerated at East Moline Correctional Center ("East Moline") at all times relevant. UMF 1. Defendant Rankin was a physician at the facility. UMF 3. Defendant Wexford Health Sources ("Wexford") employed Defendant Rankin in its capacity as the private company contracted to provide medical services at Illinois prisons. UMF 3-4.

Plaintiff suffers from scoliosis, a condition that causes a sideways curvature of the spine. AMF 6. Prior to his incarceration, he had had several surgeries related to the condition, including the placement and repair of Harrington rods. UMF 4. Harrington rods are "rigid metallic structures surgically placed along the vertebral column." (Doc. 74-3 at 10). Defendant Rankin had not previously treated an individual with Harrington rods. AMF 2.

Defendant Rankin examined Plaintiff on December 7, 2016. (Doc. 73-2 at 18). He noted Plaintiff scoliosis and prior surgeries, and he prescribed ibuprofen and Robaxin (muscle relaxer) to address Plaintiff's complaints of pain. UMF 6-7. He also ordered a low-bunk permit and an extra blanket to reduce stress on Plaintiff's back. *Id.* According to a grievance Plaintiff submitted on October 14, 2019, Plaintiff informed Defendant Rankin in December 2016 that he "was an overall high risk and prone to spinal fractures and hardware breakage based on [his] prior surgeries and that [his] spine needed to be monitored by a specialist regularly." (Doc. 74-2 at 2). Defendant Rankin apparently told Plaintiff that they could do that in the future, if necessary. *Id.*

The medical records do not disclose any further medical examinations related to Plaintiff's scoliosis until May 7, 2018. (Doc. 73-2 at 17-18). On that date, Plaintiff told a nurse he had been experiencing sharp, throbbing, and constant pain at the base of his neck over the past couple months. UMF 8. Defendant Rankin ordered x-rays of Plaintiff's spine two days later and ordered a follow-up appointment. UMF 9. The x-ray report dated May 14, 2018, stated in

relevant part: "FINDINGS: There are Harrington rods in the thoracic region. Hardware appears to be intact and in satisfactory alignment…There is no definitive evidence of a compression fracture." (Doc. 73-2 at 20). Defendant Rankin discussed the report with Plaintiff on May 17, 2018. (Doc. 73-2 at 14). He increased Plaintiff's dosage of Robaxin to address Plaintiff's complaints of pain. *Id.* Plaintiff told a nurse that he was "fine" on June 20, 2018. (Doc. 73-2 at 13).

The medical records do not disclose further complaints of back pain until December 26, 2018. On that date, Plaintiff reported to a nurse that he had "nervy" back pain that "comes and goes" for approximately two weeks. (Doc. 73-2 at 12). The nurse referred Plaintiff to Defendant Rankin, who prescribed gabapentin for Plaintiff's pain in addition to his then-current prescriptions for Ultram (a narcotic pain reliever), Tylenol, and Robaxin on January 9, 2019. *Id.* at 11.

Plaintiff reported pain near his right shoulder blade to a nurse on September 18, 2019. *Id.* at 10. Defendant Rankin ordered x-rays at the follow-up examination on October 9, 2019, when Plaintiff reported "something digging" in his back. *Id.* at 9. The radiologist's report dated October 14, 2019, stated "Again noted is hardware fixation through the thoracolumbar spine using Harrington rods. The hardware appears intact as visualized." (Doc. 73-2 at 21); UMF 19.

Defendant Rankin personally viewed the x-ray films after receiving this report, opined that Plaintiff's Harrington rods appeared broken, and referred Plaintiff to an orthopedic specialist on October 11, 2019. UMF 20-21. The radiologist confirmed the fractures in the rods in an addendum dated October 15, 2019. (Doc. 73-2 at 21). Reevaluation of the May 2018 x-rays at some point thereafter also confirmed a fracture of Plaintiff's Harrington rods in one location. Rankin Dep. 111:9-15 (Doc. 74-1 at 29). Wexford officials approved orthopedic specialist

referral on October 22, 2019. UMF 26. They later approved a referral to the neurosurgeon the orthopedic specialist had recommended. UMF 28; (Doc. 73-2 at 8).

Medical staff scheduled Plaintiff's appointment with the neurosurgeon for March 12, 2020, and they facilitated a CT scan Plaintiff underwent in early December 2019 per the neurosurgeon's request. (Doc. 73-2 at 6); UMF 29-30. Defendant Rankin increased the dosage of Plaintiff's Robaxin prescription and noted Plaintiff's pending appointment with the neurosurgeon during an examination conducted January 20, 2020, in response to Plaintiff's complaints of increased pain. (Doc. 73-2 at 5). The neurosurgeon recommended surgery following the March 12, 2020 appointment. UMF 34. Defendant Rankin submitted the request for same on March 13, 2020, and Wexford officials approved it on March 16, 2020. UMF 35-37.

Defendant Rankin admitted Plaintiff to the prison infirmary on March 18, 2020, where Plaintiff stayed through May 1, 2020. (Docs. 73-1 at 20-42; 73-2 at 1-2). While so housed, medical staff checked on Plaintiff daily and provided Tylenol #3 (a narcotic pain reliever) as needed. *Id.* The neurosurgeon's office did not call to schedule the surgery until May 27, 2020. (Doc. 73-2 at 19-20). Plaintiff had surgery on June 12, 2020. (Doc.73-2 at 30-46). Defendant Rankin reviewed the discharge instructions, prescribed the recommended medications, and admitted Plaintiff to the infirmary upon Plaintiff's return to the prison. UMF 41.

Defendant Rankin prescribed antibiotics and notified the neurosurgeon when Plaintiff showed signs of an infection on June 22, 2020 that ultimately required a debridement procedure on July 1, 2020 to treat the infection. UMF 42-44. Infection is a known risk associated with the procedure and the stainless steel hardware that was inserted next to Plaintiff's spine. UMF 42. During the times Plaintiff was housed at East Moline over the ensuing 18 months, Defendant Rankin ordered monthly labs and other tests to monitor Plaintiff's condition, modified Plaintiff's

medications accordingly, and consulted with the neurosurgeon. UMF 46-60. The neurosurgeon replaced Plaintiff's stainless steel hardware in December 2021 with rods made from a different material to reduce the risk of infection. UMF 61-62. Plaintiff received all necessary aftercare. UMF 63-64.

## ANALYSIS

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). The parties do not dispute that Plaintiff suffered from an objectively serious medical need.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. Courts defer to treatment decisions made by medical professionals unless the evidence shows that "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

A treatment decision permits an inference that the medical provider acted with deliberate indifference only when the decision constitutes "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Petties*, 836 F.3d at 729 (internal quotations omitted). Persisting in a course of treatment known to be ineffective, failing to follow an existing protocol, delaying treatment without penological justification, and refusing to follow a specialist's recommendations may permit an inference that a medical professional failed to exercise the appropriate judgment. *Id.* at 729-30.

Defendant Rankin had never treated a patient who had Harrington rods, but he was not required to accept the self-assessments Plaintiff offered at the first examination, defer to the treatment previous physicians had recommended, or order the treatment Plaintiff wanted. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (a prison medical professional "is free to make his own, independent medical determination as to the necessity of certain treatments or medications," and deference to a prior doctor's diagnosis is not required to satisfy the Eighth Amendment); *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("[A]n inmate is not entitled to demand specific [medical] care."); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (a mere disagreement with the course of treatment, standing alone, is not sufficient to attach constitutional liability).

The record does not disclose that the presence of Harrington rods always requires that the patient receive specialized care for complaints of back pain the parties agree may result from conditions unrelated to scoliosis and its associated treatment. Like other medical decisions, the decision to forego a specialist or additional diagnostic testing requires the exercise of medical

discretion, and a medical professional acts with deliberate indifference only if the decision is "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014).

Plaintiff endured a delay in receiving specialized treatment for broken Harrington rods because Defendant Rankin relied upon the May 2018 radiology report indicating that the rods remained intact. Plaintiff does not argue that x-rays were inadequate for purposes of discovering the conditions likely to result because of his medical history. Nothing suggests that Defendant Rankin had knowledge that the radiologist was substantially likely to miss the breakage, that the radiologist was not qualified to interpret x-rays taken from patients with Harrington rods, or that diagnosis of the condition causing Plaintiff's pain required a specialist in a field other than radiology. The fact that other doctors may have personally read the x-rays or approached the issue differently is not sufficient to support an inference that Defendant Rankin's reliance on the radiologist's report and failure to refer Plaintiff to a specialist at that time was deliberately indifferent. *Petties*, 836 F.3d at 729 ("[E]vidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim." (emphasis in original)); *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 616 (7th Cir. 2022).

Defendant Rankin chose to treat Plaintiff's complaint of back pain with prescriptions for pain medication he modified in response to Plaintiff's complaints throughout the relevant time period. The duration and nature of the pain Plaintiff reported to nurses in May, June, and December 2018 does not permit a reasonable inference that Defendant Rankin knew that this treatment was wholly ineffective. This is true even if the Court assumes that Plaintiff can prove his assertion that he complained about pain during examinations on undisclosed dates not included in the medical records.[1]

---

[1] Gaps in the Bates numbering on the medical records provided suggest that the Court does not have a full copy of Plaintiff's medical records, and notations therein indicate that Plaintiff received treatment from Defendant Rankin

When Plaintiff reported increased pain in October 2019, Defendant Rankin personally reviewed the x-rays after the radiologist had again reported that the Harrington rods were intact, contacted the radiologist for a re-evaluation upon his discovery of a possible breakage, and promptly referred Plaintiff to a specialist and followed all recommendations. He ordered Plaintiff housed in the infirmary pending surgery, provided narcotic-level pain medication, and any delay Plaintiff experienced in receiving surgery after that point was attributable to the specialist, not prison medical staff. The record does not permit a reasonable inference that any post-surgery complications Plaintiff experienced resulted because of Defendant Rankin's actions.

The record does not support a reasonable inference that Defendant Rankin's treatment decisions lacked the requisite exercise of professional judgment. The Court finds that no reasonable juror could conclude that Defendant Rankin violated Plaintiff's constitutional rights. Plaintiff indicated in his summary judgment response that he does not assert any claims against Defendant Wexford and does not oppose Wexford's dismissal. (Doc. 74 at 1, fn. 1). To the extent that any claims may still exist, Plaintiff cannot prevail against Defendant Wexford. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (liability under *Monell* is not available where there are no underlying constitutional violations); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).

**Defendants' Motion to Vacate Final Pretrial and Trial Date (Doc. 77)**

Defendants seek to vacate the hearings currently scheduled in this case. The motion is denied as moot pursuant to the Court's ruling on Defendants' motion for summary judgment.

---

for other medical conditions not relevant here. *See* (Doc. 73-2 at 12-13, 17-18) (gaps in Bates stamping); *Id.* at 13 ("HepC clinic scheduled today."). The record does not indicate that Plaintiff's access to medical care was hindered in any way. So long as the regular procedures to request medical care remained open to Plaintiff, the failure to address non-emergent complaints about back pain at examinations for unrelated conditions does not permit an inference of deliberate indifference. *See Rankin v. Baker*, 770 F. App'x 752, 754-55 (7th Cir. 2019) (doctor who refused to treat folliculitis and knee pain at hypertension clinic did not act with deliberate indifference).

**IT IS THEREFORE ORDERED:**

1) Defendants' Motion for Summary Judgment [73] is GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated.

2) All hearing dates currently set are VACATED. Any writs previously issued are RECALLED.

3) Defendants' Motion [77] is DENIED as moot.

4) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

Entered this 4th day of January, 2023.

*s/Sara Darrow*
SARA DARROW
CHIEF U.S. DISTRICT JUDGE